**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**MARILYN MCDANIEL**                                                               **PLAINTIFF**

**v.**                                        **Case No. 4:12-cv-00751 KGB**

**DENNIS MILLIGAN,**                                                               **DEFENDANT**
**Individually, and in his Official Capacity**

## OPINION AND ORDER

Plaintiff Marilyn McDaniel brings this action against defendant Dennis Milligan, in his individual and official capacity, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Arkansas Civil Rights Act ("the ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*  Ms. McDaniel alleges discrimination based on a disability, and she also asserts claims for malicious prosecution and retaliation.  Mr. Milligan filed his motion for summary judgment on Ms. McDaniel's disability discrimination claim (Dkt. No. 7).  Ms. McDaniel filed a response in opposition to Mr. Milligan's motion (Dkt. No. 15), and Mr. Milligan filed a reply (Dkt. No. 21).  For the reasons that follow, Mr. Milligan's motion for summary judgment is granted in part and denied in part.

### I.    Factual Background

Mr. Milligan, Saline County Circuit Clerk, hired Ms. McDaniel part-time on January 31, 2011.  Ms. McDaniel alleges that, during her first week on the job, she worked with customers and that, during her second and all subsequent weeks, she scanned and indexed active and closed files.  Ms. McDaniel admits she did not disclose herself as a person with a disability or request accommodation when Mr. Milligan hired her (Dkt. No. 15-2, ¶ 1).  However, Ms. McDaniel alleges that, "[f]rom the beginning, it was understood that [she] could have a flexible work week,

and Milligan initially agreed to this," and that she was "promised" a flexible work week (*Id.* at ¶¶ 1–2), although no details are provided in the record about this alleged agreement.

Mr. Milligan alleges that for many months he perceived Ms. McDaniel to be unwell and encouraged her to go to the doctor (Dkt. No. 8-1, ¶¶ 6–7).  In the summer of 2011, Mr. Milligan admits that Ms. McDaniel brought him a note from a medical clinic and asked that he place it in her personnel file (Dkt. No. 8, ¶ 20).  Mr. Milligan maintains that he does not believe the document addressed any sleep disorder, that Ms. McDaniel did not tell him that she had such a disorder, and that Ms. McDaniel did not request any accommodations (Dkt. No. 8-1, ¶ 8).  Ms. McDaniel denies this, stating that she and Mr. Milligan talked about her sleep problems and that she requested accommodation after she gave him the doctor's letter (Dkt. No. 15-2, ¶ 21).  Ms. McDaniel alleges that this note is a doctor's note of June 28, 2011, which is attached to her response.  The doctor's note states that Ms. McDaniel was being treated for "(1) insulin dependent diabetes mellitus, (2) major depression, (3) osteoarthritis, (4) dyslipidemia, (5) fibromyalgia, and (6) hypertension" (Dkt. No. 15-1).  It further states that, due to these conditions, Ms. McDaniel "may at times feel very fatigued and display slowed motor activity as well as possible periods of confusion especially if she doesn't eat and experiences low blood sugars.  She may also feel very sleepy at times." (*Id.*).  The doctor's note further states that any questions or information may be directed to the clinic and has written across the top right of the page, "file."

Ms. McDaniel states that she took the note to Christy Peterson, the personnel manager, and asked Ms. Peterson to put it in Ms. McDaniel's personnel file, that Ms. Peterson gave the note to Mr. Milligan, and that Mr. Milligan returned it to Ms. McDaniel saying that the note was rejected by Ms. Peterson because it had "too much information" and because she did not know

what to do with the note (Dkt. No. 15-2, ¶ 20).  In contrast, Mr. Milligan states that he asked Ms. Peterson what to do with the letter and was told that the County did not keep a medical file on part-time employees (Dkt. No. 8, ¶ 22).  Mr. Milligan states that he returned the document to Ms. McDaniel with that explanation and that he did not throw the note on the floor, despite Ms. McDaniel's allegations (Dkt. No. 8-1, ¶ 7).  Ms. McDaniel admits that Mr. Milligan did not retain the note but alleges that, in one conversation between them, Mr. Milligan tossed the note back at her and told her that she could not have any restrictions on her work (Dkt. No. 15-2, ¶ 23).

Mr. Milligan claims that Ms. McDaniel worked additional, unauthorized hours to make up for her lack of holiday pay as a part-time employee (Dkt. No. 8, ¶ 9–18).  Ms. McDaniel admits to working additional hours on four days near the Thanksgiving holiday to make up for lost holiday pay but claims that Gary Underwood, her direct supervisor, gave her permission to do so, up to 40 hours per week (Dkt. No 15-1, ¶ 9–18).

On December 7, 2011, Mr. Underwood met with Ms. McDaniel to discuss her alleged performance issues—interference in the work of others, being distracted by other activities in the office, and resistance to direction given by her supervisors.  Ms. McDaniel admits the conversation occurred but denies that such issues with her performance existed (Dkt. No. 15-2, ¶¶ 3–5).  At this meeting, Mr. Underwood also discussed Ms. McDaniel's problem staying awake at work, which Ms. McDaniel admits.  Ms. McDaniel alleges that she explained she had a disability and requested a flexible workweek as an accommodation (*Id.*, ¶ 6).

A memo from Mr. Underwood regarding that meeting touches on issues of work efficiency, work distractions, supervision, and staying awake (Dkt. No. 8-4).  Before signing the memo, next to "Stay awake," Ms. McDaniel wrote "See letter from Dr." (Dkt. No. 8-3, ¶ 10;

Dkt. No. 8-4).  Mr. Milligan alleges that Ms. McDaniel did not give Mr. Underwood a doctor's note or tell him of any medical condition that caused her to fall asleep at work (Dkt. No. 8, ¶ 8). Ms. McDaniel denies this, alleging that she showed the note to Mr. Underwood who advised her that he knew all about it and did not need to see it (Dkt. No. 15-2, ¶ 8).  Ms. McDaniel further alleges that, at this meeting, she again requested reasonable accommodations, this time from Mr. Underwood (*Id.*).

On December 12, 2011, Jim Harris, Mr. Milligan's Chief of Staff, reviewed and approved Ms. McDaniel's timesheet and met with her to discuss working extra hours without permission from a supervisor (Dkt. No. 8, ¶ 15–18).  Ms. McDaniel admits this but states that she had permission from Mr. Underwood to work extra hours (Dkt. No. 15-2, ¶ 15–18).  Mr. Harris alleges, and Ms. McDaniel denies, that after the meeting Mr. Harris learned from another employee, Jennifer Davis, that Ms. McDaniel asked Ms. Davis to slow down her work allegedly as a means to force Mr. Milligan to make Ms. McDaniel a full-time employee (Dkt. No 8-6, ¶ 5; Dkt. No. 15-2, ¶ 19).

On December 22, 2011, Mr. Milligan terminated Ms. McDaniel.  Mr. Milligan states that the Notice of Termination states his reasons for his decision to terminate Ms. McDaniel. The Notice states that Ms. McDaniel's work performance is unacceptable, noting her meeting with Mr. Underwood, stating that her attitude towards her job and work performance had both worsened since that meeting, and noting her meeting with Mr. Harris (Dkt. No. 8-7).  Ms. McDaniel asserts these reasons were unfounded and retaliatory (Dkt. No. 15-2, ¶ 25).

## II.     Standard of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant

is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Hollway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)) (citing *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006))). "Because summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed." *Id.* Accordingly, this Court applies the same summary judgment standard to discrimination cases as it does to all others.

### III.   Americans With Disabilities Act And Arkansas Civil Rights Act Claims

Ms. McDaniel claims she was discriminated against on the basis of disability in violation of both the ADA and the ACRA.  Courts "analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the [ADA]."  *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002).  The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual."  *Thompson v. Bi-State Development Agency*, 463 F.3d 821, 824 (8th Cir. 2006) (citing 42 U.S.C. § 12112(a); *Brunko v. Mercy Hosp.*, 260 F.3d 939, 941 (8th Cir. 2001)).

#### A.   The *Prima Facie* Case and Reasonable Accommodation Analysis

An ADA claimant must make a *prima facie* showing that she:  (1) is a qualified individual under the ADA, (2) suffered discrimination as the term is defined by the ADA, and (3) the discrimination was based on "disability" as defined by the ADA.  *Brown v. City of Jacksonville*, 711 F.3d 883, 888–89 (8th Cir. 2013).

##### 1.   Covered Individuals Under 2008 Amendments To The ADA

The 2008 amendments to the ADA "made clear the ADA applies to a person who has been subjected to adverse employment action under the ADA because of an actual *or perceived* physical or mental impairment *whether or not* the impairment limits *or is perceived to limit* a major life activity."  *Brown v. City of Jacksonville*, 711 F.3d 883, 889 (2013) (emphasis in original) (internal quotations omitted); *see* 42 U.S.C. § 12102(3)(A).  Ms. McDaniel contends narcolepsy is her disability.  Mr. Milligan contends that Ms. McDaniel "provides no evidence that she is narcoleptic, and according to her doctor's note she is not" (Dkt. No. 21, 2).  Mr. Milligan misstates the appropriate standard.  The facts, viewed in the light most favorable to Ms. McDaniel, allow the Court to determine for the purpose of summary judgment that Ms.

McDaniel showed Mr. Milligan a doctor's note describing several impairments and their effects (fatigue, confusion, and sleepiness) which could at least be perceived to limit a major life activity, which is the standard for determining who is a covered individual under the 2008 amendments to the ADA. The Court notes and acknowledges that the ACRA, however, does not contemplate a cause of action for those merely regarded as being disabled. *Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 401 (Ark. 2002).

Even before the 2008 amendments to the ADA, "the determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483 (1999) (quotations omitted). Thus, while the doctor's note never explicitly stated that Ms. McDaniel had narcolepsy, it stated several effects of her impairments that have similar effects of narcolepsy on Ms. McDaniel. Ms. McDaniel has established sufficient record evidence to create a genuine issue of material fact on whether she is an individual protected by the ADA and whether she has a disability as defined by the ADA.

### 2.    "Qualified Individual"

A "qualified individual" is one, "who, with or without reasonable accommodation, can perform the essential functions" of her position. 42 U.S.C. § 12111(8). Mr. Milligan does not dispute that Ms. McDaniel possessed the requisite skills, education, experience, and training required for her job, but he alleges that she was not able to perform the essential functions of her job (Dkt. No. 16, at 10). Mr. Milligan claims it is undisputed that an essential function of Ms. McDaniel's job included scanning and indexing documents in an electronic filing system and that it is undisputed that she was unable to perform those duties at an acceptable level. However, only the former is undisputed. Ms. McDaniel "swears she could perform her job." Mr. Milligan

cites to affidavits from two of Ms. McDaniel's supervisors stating that Ms. McDaniel was a problematic employee, while Ms. McDaniel denies that she did not perform her work effectively. Furthermore, according to the affidavits of her supervisors, Ms. McDaniel exhibited symptoms of narcolepsy early in her employment and performed her job for almost one year.  Although Mr. Milligan and Mr. Underwood claim in their affidavits that Myka Sample, Ms. McDaniel's immediate supervisor before Mr. Underwood, told them that Ms. McDaniel had poor performance issues, there is nothing in the record to indicate that Ms. McDaniel was disciplined or counseled in any way until December 2011, the month she was fired and almost a year after she began the job.

Although Mr. Milligan provides some evidence that Ms. McDaniel may not have performed her job well, perhaps especially near the end of her employment when documentation of performance issues arose, those contentions are disputed by Ms. McDaniel.  The Court finds Mr. Milligan has not sufficiently alleged that Ms. McDaniel could not perform the essential functions of her job, especially given that she had performed it for almost a year exhibiting similar symptoms without note.  Furthermore, the Court notes that the standard for determining who is a "qualified individual" under the ADA includes people who can only perform the essential functions of their jobs *with reasonable accommodation*.  *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 955 (8th Cir. 1999) (quotations omitted) (emphasis in original).  Mr. Milligan has made no showing that Ms. McDaniel could not have performed the essential functions of her job with reasonable accommodation.  Thus, viewing the facts in the light most favorable to Ms. McDaniel as required at this stage of the litigation, the Court finds Ms. McDaniel has established sufficient record evidence to create a genuine issue of material fact as to whether she is a "qualified individual" as defined by the ADA.

### 3.      Discrimination Based On Disability And Reasonable Accommodation

Under the ADA, "discriminat[ion] against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee . . . ." 42 U.S.C. § 12112(b)(5)(A).   "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation.   This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Fjellestad*, 188 F.3d 951 (quoting 29 C.F.R. § 1630.2(o)(3)).

The Eighth Circuit has held that "[i]f an employee needs an accommodation, the employer must engage in an interactive process." *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1045 (8th Cir. 2004); *see Fjellestad*, 188 F.3d at 952 (finding "that for purposes of summary judgment, the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith").   An employer impedes this process when:  (1) the employer knows of the employee's disability; (2) the employee requests accommodations or assistance; (3) the employer does not in good faith assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Kratzer*, 398 F.3d at 1045.

Applying this test to the facts at hand, Mr. Milligan claims he never knew Ms. McDaniel was disabled, but Mr. Milligan admits that for many months he perceived Ms. McDaniel to be unwell and encouraged her to go to the doctor and acknowledges that he saw Ms. McDaniel's

doctor's note in the summer of 2011 which describes Ms. McDaniel's physical and mental limitations, including fatigue, confusion, and sleepiness (Dkt. No. 15-1).   Mr. Milligan cites *Miller v. Nat'l Casualty Co.*, 61 F.3d 627, 629–30 (8th Cir. 1995), and *Loftin v. United Parcel Serv., Inc.*, 2009 WL 33048, *5 (E.D. Ark. Jan. 5, 2009), *amended*, 2009 WL 151153 (E.D. Ark. Jan. 15, 2009), for the proposition that vague allusions to a serious health problem are not sufficient to make the employer aware that an employee suffers from a disability.   While this general proposition is true, the facts of those cases differ from the facts presented here.   In *Miller,* the doctor's note at issue defined a "*situational* stress reaction," *temporarily* releasing the employee from work.  61 F.3d at 629–30 (emphasis added).  In *Loftin*, the plaintiff sent a letter to his employer saying only that he had "personal health problems" and received FMLA leave for a "serious health condition" that did not qualify as a disability under the pre-2008 ADA amendments.  2009 WL 33048, *5.   Neither *Miller* nor *Loftin* are analogous to the instant case where Ms. McDaniel gave to Mr. Milligan a doctor's note that explained Ms. McDaniel's various illnesses and their effects.

Mr. Milligan also argues that Ms. McDaniel did not request accommodation and that Ms. McDaniel has not pleaded with sufficient specificity her requested accommodation. Before the Court is evidence that Ms. McDaniel gave both Mr. Milligan and Mr. Underwood her doctor's note and evidence from Ms. McDaniel that she requested accommodation at such times.   Mr. Milligan admitted to having seen the note but did not recall that it contained information about a sleeping condition.  The note does contain such information, based on the note in the record.  Mr. Underwood denies having seen the doctor's note.  However, Ms. McDaniel wrote "see note from Dr." on a memo that both she and Mr. Underwood signed.  Thus, Mr. Underwood was at least on notice to ask further questions about the existence and content of the note.  Viewing the record

evidence in the light most favorable to Ms. McDaniel, she has created a genuine issue of material fact regarding whether she requested accommodation from Mr. Milligan when she showed him and Mr. Underwood her doctor's note so as to survive summary judgment.

Where an employee has requested "that she be 'reasonably accommodated,' using those specific words," the Eighth Circuit has found that her "employer *must* make a reasonable effort to determine the appropriate accommodation . . . [which is] best determined through an interactive process." *See Fjellestad*, 188 F.3d 956, 951 (quoting 29 C.F.R. § 1630.2, App. § 1630.9) (emphasis in original); *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004) ("In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations. The Act compels employers to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts."). There is nothing in the record to indicate that Mr. Milligan or any of Ms. McDaniel's supervisors engaged in this process with her. Thus, there is sufficient *prima facie* evidence so as to create a genuine issue of material fact regarding whether Mr. Milligan may have been acting in bad faith and impeding the interactive process required of him. *See Fjellestad*, 188 F.3d at 952; *Kratzer* 398 F.3d at 1045.

Mr. Milligan contends that an employee must specify what type of accommodation is needed in order to recover on a reasonable accommodation claim in the Eighth Circuit, citing *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1217–18 (8th Cir. 1999), for this proposition. This Court disagrees. Ms. Milligan need only have requested accommodation, not specific accommodations. The court in *Mole* found that the plaintiff who had otherwise been reasonably accommodated by her employer could not secretly wish for specific accommodations and then sue her employer for not providing those specific accommodations. *Id.* This is not the

equivalent of requiring that an employee request specific accommodations from the outset.  On

the contrary, *Mole* is consistent with the body of Eighth Circuit precedent requiring employers to

engage in the interactive process with employees to determine at the outset what, if any,

reasonable accommodations are possible.  The Eighth Circuit in *Mole* notably found that there

was "no evidence [the employer] failed to make a good faith reasonable effort to help Mole

determine if other accommodations might be needed."  *Id.* at 1218.   In rejecting a similar

argument from an employer-defendant, the Eighth Circuit in *Fjellestad* quoted the above passage

from *Mole*, stating:

> Here, however, [plaintiff] did request that she be "reasonably accommodated,"
> using those specific words, both before and after her termination.  Furthermore,
> the majority in *Mole* found there was "no evidence Buckhorn failed to make a
> good faith reasonable effort to help Mole determine if other accommodations
> might be needed." *Id.* at 1218.  In so doing, the majority in *Mole* cited *Beck v.
> University of Wisconsin Board of Regents,* 75 F.3d 1130, 1135 (7th Cir. 1996),
> which concluded that the employer has some responsibility in determining the
> necessary accommodations through an interactive process and stated that "courts
> should look for signs of failure to participate in good faith or failure by one of the
> parties to make reasonable efforts to help the other party determine what specific
> accommodations are necessary. . . .  A party that fails to communicate, by way of
> initiation or response, may also be acting in bad faith."  Unlike the situation in
> *Mole,* in the present case we find that a genuine issue of material fact exists as to
> whether [the employer] made a good faith reasonable effort to determine whether
> appropriate reasonable accommodations existed.

188 F.3d at 956

The Court finds "that summary judgment is typically precluded when there is a genuine

dispute as to whether the employer acted in good faith and engaged in the interactive process of

seeking reasonable accommodations."  *Fjellestad*, 188 F.3d at 953 ("Because employers have a

duty to help the disabled employee devise accommodations, an employer who acts in bad faith in

the interactive process will be liable if the jury can reasonably conclude that the employee would

have been able to perform the job with accommodations.").  Thus, viewing the record evidence

in the light most favorable to the plaintiff, Ms. McDaniel has alleged sufficient facts both to establish a *prima facie* case of employment discrimination based on disability and to survive summary judgment on her reasonable accommodation claim.

### B.    Wrongful Termination Claim

To succeed on her wrongful termination claim under the ADA, Ms. McDaniel must prove her case through either direct evidence or the *McDonnell Douglas* burden-shifting framework applied by the Eighth Circuit to ADA claims. *See Willnerd v. First National Nebraska, Inc.*, 558 F.3d 770, 777–78 (8th Cir. 2009).

"To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation marks omitted). Ms. McDaniel has alleged direct evidence of discrimination—that Mr. Milligan told her she could have "no restrictions" on her employment when she requested accommodations (Dkt. No. 15-2, ¶ 23). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). Ms. McDaniel's allegation that Mr. Milligan told her she could have "no restrictions" is unsupported by anything other than Ms. McDaniel's allegations. There is some evidence Mr. Milligan acted in bad faith by not reasonably accommodating Ms. McDaniel's disability. However, "discriminatory intent is not at issue" in a reasonable accommodation claim. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006). Thus, this evidence is not sufficient by itself "to permit the fact finder to infer a discriminatory attitude that was more likely than not a

motivating factor in his decision to terminate her." *Rivers-Frison*, 133 F.3d at 619. Accordingly, the Court will proceed through the *McDonnell Douglas* analysis for Ms. McDaniel's claims.

Under the *McDonnell Douglas* burden-shifting framework applied by the Eighth Circuit to ADA claims, Ms. McDaniel must first make out a *prima facie* case under the ADA. The Court has already determined that Ms. McDaniel has made out a *prima facie* case, thus the burden shifts to Mr. Milligan to articulate a legitimate, non-discriminatory reason for her termination. *See Willnerd*, 558 F.3d at 777–78. Mr. Milligan has met this burden with affidavits from himself and two other supervisors of Ms. McDaniel; evidence of two meetings with Ms. McDaniel discussing her employment issues, including inadequate job performance, distracting others, resistance to direction, and working unauthorized hours; a memo signed by Ms. McDaniel and Mr. Underwood detailing some of these issues; and Ms. McDaniel's notice of termination citing these same issues.

The final burden of proof thus shifts to Ms. McDaniel to discredit Mr. Milligan's stated reasons for terminating her and to show circumstances raising a reasonable inference that the real reason for her discharge was her disability. *See id.* The Court has already determined that Ms. McDaniel has proven a genuine dispute as to whether Mr. Milligan acted in good faith and engaged in the interactive process of seeking reasonable accommodations for Ms. McDaniel. Because "[d]isability discrimination is defined to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability,'" the Court has already found a genuine issue of fact as to whether Mr. Milligan unlawfully discriminated against Ms. McDaniel based on her disability. *See Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1216 (8th Cir. 1999) (quoting 42 U.S.C. §

12112(b)(5)(A)).  Ms. McDaniel's allegations that she did perform her job adequately combined with some evidence that Mr. Milligan may have acted in bad faith with regard to Ms. McDaniel's employment, thereby unlawfully discriminating against her, is enough for Ms. McDaniel to satisfy the *McDonnell Douglas* burden-shifting framework and survive summary judgment on her wrongful termination claim.  *See, e.g.*, *Brody v. ITT Educ. Servs., Inc.*, 2011 WL 1239903, *5 (D. Nev. Mar. 30, 2011) (finding that a triable issue of fact as to whether employer unlawfully discriminated against employee due to employer's failure to engage in the required interactive process before terminating employee also raised a triable issue of fact as to whether employee was wrongfully terminated); *Whelan v. Teledyne Metalworkers Products*, 2005 WL 2240078, *17 (W.D. Pa. Sept. 14, 2005) (same); *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1065 (C.D. Cal. 2005) (same).

### C.    No Individual Liability Under The ADA Or ACRA

Mr. Milligan's final argument is that he cannot be held liable for employment discrimination in his individual capacity under the ADA or ACRA.  Ms. McDaniel does not dispute this, and the Court agrees.  *See, e.g.*, *Garner v. Tobacco Superstores, Inc*., 2008 WL 205582, *2 (E.D. Ark. Jan. 23, 2008) ("Supervisors do not meet the definition of 'employer' under the ADA and therefore cannot be held liable in their individual capacities."); *Calaway v. Practice Mgmt. Servs., Inc.*, 2010 Ark. 432, *3–4 (2010) (stating that the ACRA holds only *employers* liable for employment discrimination under the ACRA, but that an individual supervisor can be personally liable for alleged acts of retaliation); *Adams v. Tyson Foods, Inc.*, 2010 WL 1488001, *5 (W.D. Ark. Jan. 6, 2010), *report and recommendation adopted*, 2010 WL 1488006 (W.D. Ark. Apr. 13, 2010) ("it is clear the [ACRA] does not contemplate individual liability on the part of supervisors and managers").  Thus, with the exception of Ms. McDaniel's

15

retaliation claim, all ADA and ACRA claims against Mr. Milligan in his individual capacity are dismissed with prejudice.

**IV.     Malicious Prosecution And Retaliation Claim**

Ms. McDaniel also alleges Mr. Milligan maliciously prosecuted her to intimidate and harass her from campaigning against him and in retaliation for her filing an EEOC charge and exercising her right of free speech.  Mr. Milligan has not moved for summary judgment on this claim but only said that Ms. McDaniel's remaining state law claims (malicious prosecution) should be dismissed if every other claim over which this Court has jurisdiction is dismissed.  The Court has not dismissed every other claim and, thus, retains jurisdiction over Ms. McDaniel's state law claim.

\*   \*   \*

For these reasons, Mr. Milligan's motion for summary judgment as to Ms. McDaniel's ADA and ACRA claims is granted in part and denied in part.  Ms. McDaniel's ADA and ACRA claims against Mr. Milligan in his individual capacity are hereby dismissed with prejudice.  Mr. Milligan's motion is denied in all other respects.

SO ORDERED this 25th day of July, 2014.

_Kristine G. Baker_
_____
Kristine G. Baker
United States District Judge